IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Karen L. Burgess, ) | |
| ) | Civil Action No. 8:04-0502-JFA-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income benefits (SSI) under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

On November 2, 2001, and October 23, 2001, respectively, the plaintiff filed applications for DIB and SSI, alleging disability beginning September 6, 2001. The applications were denied initially and on reconsideration. On July 2, 2002, the plaintiff

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

requested a hearing, which was held on November 5, 2002. Following the hearing, at which the plaintiff and a vocational expert appeared, the administrative law judge considered the case *de novo*, and on March 27, 2003, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on January 23, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits, as set forth in Section 216(i) of the Social Security Act, and is insured for benefits through December 31, 2006.
>
> (2)     The claimant has not engaged in substantial gainful activity since September 6, 2001, the alleged onset of disability.
>
> (3)     The claimant's lumbar degenerative disc disease, chronic lower back and leg pain, depression and anxiety are impairments considered "severe" in combination based on the criteria in the Regulations at 20 CFR §§ 404.1520(b) and 416.920(b).
>
> (4)     The claimant's impairments do not meet or medically equal the criteria of any listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)     The claimant's testimony does not support a finding of disability.
>
> (6)     The undersigned has carefully considered all of the medical opinions regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).
>
> (7)     The claimant has the residual functional capacity to perform "light" work, as defined by 20 CFR 404.1567 and 416.967, subject to the following additional limitations: she is to have the option to alternate between sitting or standing as needed; she is to avoid all crawling, crouching, climbing, squatting, kneeling and pushing or pulling with the legs; and she is restricted to simple, unskilled work.

(8) The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

(9) The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

(10) The claimant has more than a high school education (20 CFR §§ 404.1564 and 416.964) and transferability of skills is not an issue in this case.

(11) Although the claimant's limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that she could perform.

(12) The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals

3

an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to
> support a particular conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less than a
> preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is "substantial
> evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **FACTS PRESENTED**

The plaintiff was born on February 26, 1965, and was 38 years old on the date of the decision of the ALJ (Tr. 141). She has a high school education with some technical education (Tr. 144). She has past work experience as an office worker, administrative assistant, contract analyst and retail cashier (Tr. 62). Her alleged date of onset was September 6, 2001.

On September 11, 2001, the plaintiff was examined by Dr. Tamara Wolfman. The plaintiff complained of lower back pain from the previous week, with radicular pain to both her upper thighs, impaired ambulation and questionable urinary incontinence. Dr. Wolfman found the plaintiff to have full strength and normal symmetrical reflexes in her lower extremities, bilaterally, and positive bilateral straight leg raising tests. Dr. Wolfman noted that the plaintiff "report[ed] a tremendous amount of pain[,] but [was] smiling and joking throughout the visit." She also noted that the plaintiff had been diagnosed with depression but was "stable on [P]axil." Dr. Wortham stated that she discussed the plaintiff's obese

5

condition with her but that the plaintiff stated she is "too skinny" if she weighs under 200 pounds. X-rays of her lumbar spine revealed L4-5 disc space narrowing, with possible L4-5 disc disease. The remaining lumbar spine maintained anatomic alignment without evidence of spondylolisthesis, the facet joints were intact without evidence of osteoarthritis, and no bony lesions or fractures were noted (Tr. 88-92).

On October 4, 2001, an MRI of the plaintiff's lumbar spine revealed disc protrusion at L5-S1, contacting the transiting right S1 nerve root (Tr. 85; 93).

On November 1, 2001, a physician's statement was completed. The signature on this form is illegible, but whoever signed it indicated that the plaintiff was able to engage in part-time employment and was restricted to sitting for up to 30 minutes with postural changes, and lifting up to 20 pounds. The physician recommended epidural steroid injections, physical therapy and medication (Tr. 95-96).

On December 17, 2001, the plaintiff received a steroid injection from Dr. Mark Netherton (Tr. 97).

On December 20, 2001, Dr. F.K. Baker, a state agency physician, reviewed the plaintiff's medical records and found that she had no severe impairments. Dr. Baker specifically noted that the plaintiff's depression and leg and back impairments were not severe (Tr. 120-121).

On February 14, 2002, Dr. Steve Gilbert with the MUSC Pain Management Clinic examined the plaintiff, who had been referred for conservative treatment. The plaintiff told Dr. Gilbert that the epidural injection she had received had not alleviated her pain. Dr. Gilbert's examination revealed that the plaintiff was mildly obese, had a normal affect, and intact short and long term memory. Dr. Gilbert found that the plaintiff was neurologically intact to sensory and motor examinations in her bilateral upper and lower extremities; however, she had slight weakness to dorsiflexion of the right foot. Dr. Gilbert found that the plaintiff had tenderness in her back and exacerbation of pain on extension of her back. Dr.

6

Gilbert's assessment was "low back pain with possible radiculopathy in the right lower extremity." He also noted that the plaintiff had an annular tear, which could be causing her pain, but that "it is impossible to say whether the pain is primarily facet versus discogenic." Dr. Gilbert administered bilateral greater trochanteric bursa injections and prescribed Zonegran for muscle spasms (Tr. 99-102).

On April 30, 2002, the plaintiff completed a Daily Activities Questionnaire in which she stated that she needed assistance lacing her shoes, because bending was difficult. She stated that she lived with her son and other family members, and that she helped her son get ready for school in the mornings. She also indicated that she did laundry but that other household members did most of the other chores. The plaintiff also stated that she went grocery shopping once or twice a month but that other family members did the bulk of the shopping (Tr. 76). She reported that she drove a car but could only go short distances because she got leg cramps (Tr. 77). The plaintiff also indicated that she was unable to manage her finances "because of [her] disabling condition" (Tr. 75).

On May 5, 2002, a case worker completed a report of contact form. The plaintiff said that when she took her medication she felt better, did not have crying spells and wanted to do her daily routine. She also said that she was able to take care of her eight-year-old son without problems. She said that she cleaned up a little around the house, and read Christian literature and other books. The plaintiff stated that she had no problems concentrating and that her medications made it easy for her to fall asleep. The plaintiff also said that she had no money but that she would be able to manage her finances (Tr. 103).

On May 10, 2002, Dr. Patrick Jarrell, a state agency psychologist, completed a Psychiatric Review Technique form on which he assessed the plaintiff's mental functioning, based upon a review of her records. Dr. Jarrell found that the plaintiff had an affective disorder and depression, but that these impairments were not severe. He also found that the plaintiff's mental impairments imposed no difficulties on her ability to maintain

7

concentration, persistence or pace; that she had mild limitations in her activities of daily living and social functioning; and that she had experienced no episodes of decompensation (Tr. 104-117).

At the hearing, where the plaintiff was unrepresented by counsel, she testified that she was 5'8" tall and weighed 240 pounds. She testified that she had a driver's license and that she drove an automobile. According to the plaintiff, she became unable to work in September 2001, when she experienced back pain after taking a trip (Tr. 147-148). She testified that she was unable to walk for "a couple of days" after the road trip due to her back pain (Tr. 148). She also testified that she could stand for 15 minutes and sit for approximately 30 minutes (Tr. 153).

The ALJ also took testimony from a vocational expert, who testified that there were jobs in the local and national economies which an individual of the plaintiff's age, education and experience, with certain limitations, could perform (Tr. 158-159).

## **ANALYSIS**

The plaintiff alleges that the ALJ erred by (1) failing to adequately consider her subjective complaints of symptoms and disabling pain; (2) failing to adequately consider her vocational limitations; and (3) by failing to adequately develop the record.

***Plaintiff's Subjective Complaints***

The plaintiff contends that the ALJ erred in failing to find her allegations of pain and limited function to be fully credible.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is

8

unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

The ALJ here acknowledged that the plaintiff had impairments that could reasonably cause pain:

> As explained previously, although the evidence showed that the claimant has medically determinable impairments that could reasonably be expected to produce some of the pain and other symptoms alleged, the evidence did not support the claimant's allegations of the intensity and persistence of such pain and other symptoms.

(Tr. 18). While the ALJ stated that he had evaluated the plaintiff's symptoms, including pain, in accordance with Social Security regulations, he did not specify in detail the reasons for his finding that the plaintiff was not credible. In fact, the ALJ's finding on this issue was conclusory, at best. Accordingly, the case should be remanded for him to explain his credibility determination.

### *Vocational Expert Testimony*

The plaintiff also contends that the ALJ erred in accepting the testimony of the vocational expert. Specifically, the plaintiff seems to be arguing that the vocational expert testified that there were two broad job categories the plaintiff could perform, but that there was no evidence as to what the necessity of a sit/stand option would do to the availability of these jobs.

The ALJ restricted the plaintiff to performing the minimal exertional demands of a limited range of light work. In making his residual functional capacity determination, the ALJ factored in the plaintiff's back problems by limiting her to working with a sit/stand option; avoiding all crawling, crouching, climbing, squatting or kneeling; and avoiding pushing and pulling of controls with her legs. In presenting the hypothetical to the vocational expert, the ALJ incorporated these limitations (Tr. 156-157). The vocational expert identified the

9

unskilled light jobs of hand packer or bench hand, assembler or fabricator, and machine tender that would accommodate the specified limitations, including the option to sit or stand at will (Tr. 158-159). The ALJ found, based on the testimony of the vocational expert, that these numbers were significant (Tr. 20).

The ALJ properly relied on the testimony of the vocational expert. On remand, however, after conducting a proper credibility analysis, the ALJ may reach different conclusions. In the event that a new credibility determination necessitates new findings, the ALJ is directed to take additional vocational testimony. *See Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1979) (where substantial evidence does not support the ALJ's finding of no disability, the hypothetical based on that faulty reasoning must be re-examined upon remand).[2]

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes that the ALJ's findings are not supported by substantial evidence and the decision of the Commissioner should be reversed and the matter remanded for further consideration regarding the credibility of the plaintiff and, if necessary, the testimony of the vocational expert.

Therefore, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

s/Bruce H. Hendricks
United States Magistrate Judge

May 31, 2005

Greenville, South Carolina

---

[2] The plaintiff also argues that the ALJ erred by not fully developing the record. Because this court is recommending a remand of this matter for a proper credibility analysis, it is unnecessary for this court to decide this issue. On remand, the ALJ may reopen the record and take more testimony if he determines it to be necessary.